## STREETS AND ALLEYS IN PARKESBURG BOROUGH.

CERTIORARI TO THE COURT OF QUARTER SESSIONS OF CHESTER COUNTY.

Argued February 11, 1889—Decided March 11, 1889.

1. By § 2, act of April 3, 1851, P. L. 320, the power to lay out and ordain streets, alleys, etc., beginning and ending within the corporate limits of a borough subject to the provisions of said act, is exclusively in the corporate authorities: Somerset and Stoystown Road, 74 Pa. 61; South Chester Road, 80 Pa. 371.

Opinion of Court below.

2. Under the provisions of § 27 of said act and of § 8, article XVI. of the constitution, the streets, alleys, etc., so laid out and ordained, may not be opened to public use until just compensation is made to property owners, to be ascertained upon assessment under proceedings in the Court of Quarter Sessions.

3. The proviso to paragraph V., § 27 of said act, that all damages assessed beyond the value of the land taken shall be paid by the corporation, applies now only to roads laid out under the general road law of June 13, 1836, P. L. 555, of which parts only are within the corporate limits.

4. But where damages to property owners are assessed in proceedings upon the petition of the corporate authorities, under the act of April 22, 1856, P. L. 525, on the opening of streets, alleys, etc., wholly within the corporate limits, the entire damages, including the value of the land taken, are to be paid by the municipality.

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 132 January Term 1888, Sup. Ct.; court below, No. . . . . . Term 1887, Q. S.

On January 31, 1887, viewers were appointed upon the petition of the burgess and town council of the borough of Parkesburg to the Court of Quarter Sessions, representing that the corporate officers of the borough had laid out, enacted and ordained a number of streets and alleys in said borough, describing them by name and location, and that they were about to open the same and had been unable to secure from the owners of the lands occupied thereby releases of claims to damages which might arise from the opening thereof; praying for the appointment of seven disinterested freeholders of the borough to assess damages and contributions, etc. Viewers appointed and order issued.

On April 25, 1887, the report of the jury of view was filed and confirmed nisi.

On August 8, 1887, a rule was granted to show cause why said court should not make an order approving and confirming the report of the jury to assess damages, and directing the county treasurer to pay said damages to the persons entitled thereto, out of the county stock, returnable, etc.

The rule having been argued, the court, WADDELL, J., on November 7, 1887, filed the following opinion:

This is a rule to show cause why the court should not approve and confirm the report of a jury appointed to assess damages done to certain land owners in the borough of Parkesburg, occasioned by the opening of certain streets and alleys in said borough, and also make an order directing the county treasurer to pay said damages out of the county stock.

This borough was incorporated by special act of assembly, but, by the terms of the act, made subject to the provisions of the general borough law: Act of March 1, 1872, P. L. 195. It appears that the corporate officers of said borough surveyed, laid out, enacted and ordained the streets and alleys in question, and, being about to open the same, and being unable to secure from the land-owners releases of damages, applied to the court for the appointment of a jury to assess these damages. The court thereupon, under the provisions of the act of 1856, appointed seven disinterested freeholders of said borough to view the premises described in the petition, and assess the damages, if any, sustained by the owners. The jury performed this duty, and reported to the court an assessment of damages sustained by certain land-owners, by reason of the taking of their land alone, for the use of said streets and alleys. These land-owners now ask the court to approve and confirm said report, and further, to make an order directing the county treasurer to pay the damages thus assessed, out of the county stock. The county commissioners deny the right of the court to make such an order upon two grounds: (1) because the county is not liable to pay such damages for the opening of streets and alleys, in boroughs incorporated under or subject to what is known as the general borough law; and, (2) because the court has no power to make or enforce such an order.

1. It is a fundamental principle of our government that private property shall not be taken for public use without fully compensating the owner. With this principle in view the legislature has, from time to time, provided that the owner of land taken for public roads shall be paid by the county for all damages sustained by him. In the Newville Road Case, 8 W. 177, the court say: " Whatever may be the nature of the loss or damage which the owner of the land sustains by the road passing through his land, he is to be compensated for it, and it cannot be pretended that occupying his land for a public road, and

lessening the value of the remainder, is not a damage to him. It is unnecessary to inquire what might be the right of the commonwealth to take the land of individuals for public highways without making compensation, under the original reservation of six acres in every hundred for roads, etc. It is sufficient to say that they have not chosen to do so, but have directed compensation to the owner, since the year 1700, for taking improved land . . . . . and have awarded compensation for whatever damage or injury he may sustain."

The act of 1836, after providing for the appointment of a jury to assess the damages done to land-owners by reason of the opening of public roads through their properties, proceeds as follows : " The viewers so appointed shall make report in writing to the next Court of Quarter Sessions, and if this report be approved by the court, the amount of damages awarded shall be paid by the county treasurer, out of the county stock, to the party ' entitled thereto." This continues to be the law, as regards the payment of damages occasioned by the laying out and opening of all county roads. It is also applicable to the payment of all damages occasioned by the laying out and opening of all streets in boroughs not incorporated under or subject to the provisions of the general law relating to boroughs. Does it apply to the damages occasioned by the opening of streets in such boroughs ?

We need hardly say that no distinction is to be made between the terms, highway and street. In common parlance the word, street, is equivalent to the word, highway : Fitzwater Street, 4 S. & R. 108 ; and in the statute they are to be regarded as synonymous.

It is clear, then, that the act of 1836 has made full provision for the laying out and opening of streets or highways, and the assessment and payment of all damages occasioned thereby. These provisions apply to all cases, except where, by subsequent legislation, they have been changed, modified, or repealed. Do the acts relating to boroughs change the general road law in respect to the laying out and opening of streets, and the payment of damages resulting therefrom ?

The act of April 3, 1851, P. L. 320, § 27, provides " that like proceedings shall be had for the opening, widening, and straightening of the roads, streets, lanes, courts, alleys, etc.,

laid out and ordained in accordance with the provisions of this act, as are provided by law for the laying out and opening of public roads within this commonwealth." It further provides " that such streets, lanes and alleys, etc., shall not be opened for public use until the damages shall be liquidated, and, upon any amounts due or to become due by borough corporations for the purposes aforesaid, interest shall be allowed and paid from the date of the adjudication of said damages."

It has been held that this act changes the mode of laying out streets in boroughs. Under it the borough authorities have the power to lay out and ordain streets without the intervention of a jury from the Court of Quarter Sessions. It is clear that, so far, the only change made in the act of 1836, by these provisions of the act of 1851, was as to the laying out of the streets. No change was made in the manner of opening them. It is true, as we have already said, that the third proviso of the third division of the 27th section provides that " upon any amounts due or to become due by borough corporations for the purposes aforesaid, interest shall be allowed and paid from the date of the adjudication of said damages." It is difficult to determine what this proviso means, but we think it is clear that it does not impose the payment of any damages for the opening of streets upon boroughs. Such a liability cannot be created by implication. It should be created by a clear and positive enactment, and especially is this the case where it has already been imposed directly upon the county.

We are therefore justified in saying, that the provisions of the act of 1851 make no change in the road system of the commonwealth, except in the matter of laying out the same, and if the provisions of the act of 1836 are applicable to boroughs, the damages occasioned by the laying out of streets therein are still to be paid by the county. The same act, however, further provides " that all damages assessed, beyond the value of the land thus appropriated to public use, shall be paid by the corporation, and the jury shall separately assess the same."

The legislature here evidently intended to discriminate in the matter of damages. What had theretofore been regarded as one subject for consideration by the jury, was hereafter to be divided into two subjects; the value of the land appropriated to public use was to be one object of assessment, and all dam-

ages beyond this was to be another object. The jury must separately assess these objects. The latter assessment must be paid by the borough. Who is to pay the other? Upon this point the act is silent. It makes no provision for the payment of the same, and unless the land thus appropriated to public use is to be paid for under the provisions of the act of 1836, it cannot be paid for at all. The act does not impose this liability upon boroughs. In fact, the language used justifies us in saying that the legislature did not intend boroughs to pay this character of damage.

The language is, "all damages assessed beyond the value of the land thus appropriated to public use, shall be paid by the corporation." The value of the land appropriated, unless counterbalanced by the advantages, must be paid by somebody else, or go without being paid. The legislature did not intend it should be taken without compensation. Such legislation might be regarded as unconstitutional, under the ruling in Pittsburgh v. Scott, 1 Pa. 314, and would certainly be against the settled policy of the commonwealth from its early foundation, and is not to be established by inference alone. If the value of the land appropriated is to be paid for, it can only be done, therefore, by virtue of the provisions of the act of 1836.

If we are correct in these conclusions, are they modified or abolished by the provisions of the act of April 22, 1856, P. L. 525? This act recognizes the right of the town council to open streets in boroughs, as well as lay them out, and also defines the method of assessing the damages resulting therefrom. It is to be by a jury of the freeholders of the borough, appointed by the proper Court of Quarter Sessions, and this jury is clothed with authority to make assessments for contribution upon all such properties as may be benefited, over and above all disadvantage. In these particulars it changed the act of 1836 and the act of 1851. It then provides that the jury shall report their proceedings specifically to the court, who may subsequently modify, approve, and confirm their report, and, upon it being so disposed of, the burgess and council may proceed to collect all such damages and assessments for contribution, in the same manner as other debts due boroughs are by law collectible. Thus, we see, the changes made are in the manner of opening the streets and the assessment of damages.

Opinion of Court below.

No change is made in the payment of damages. Nothing is said on the subject of payment. It continues as it was under the act of 1836, modified by the act of 1851. In view of the acts of 1851 and 1856, are the provisions of the act of 1836 now applicable to the streets of a borough incorporated under the acts relating to boroughs?

The act of 1836 prescribed a general system for laying out and opening roads and streets throughout the commonwealth, and provided for the assessment and payment of the damages occasioned thereby. All its provisions are as applicable to boroughs as they are to townships: Newville Road Case, 8 W. 172. The acts of 1851 and 1856 are interposed as a substitute for the act of 1836, as far as they go and no farther. Beyond this the earlier statute remains untouched, and the later ones are to be construed and treated in connection with, and as part of it: Sharett's Road, 8 Pa. 92; Smedley v. Erwin, 51 Pa. 445; In re Ridge Avenue, 99 Pa. 476; Somerset & Stoystown Road, 74 Pa. 63. Where there are several acts on the same subject, they are to be taken together, and as interpreting and enforcing each other. Statutes on the same subject are to be construed together. The general system of the legislation upon any subject-matter may be taken into view to aid the construction of any one statute relating to the same subject: Neeld's Road, 1 Pa. 355. We are therefore of opinion that the county is the proper and only corporation liable to pay the damages occasioned to land owners in a borough incorporated by the court, by reason of the taking of their land for the use of streets and alleys. All damages beyond the value of the land thus appropriated to public use are to be paid by the borough. The damages assessed in the case in hand are for the taking of land alone. No damages appear to have been incurred beyond the taking of the land.

2. The second inquiry is, has the Court of Quarter Sessions power to make and enforce an order against the county treasurer for the payment of such damages? It might be regarded as better practice, to enforce in the Common Pleas the payment of the damages when ascertained. The parties here interested, however, have thought proper to ask the Court of Quarter Sessions to make and enforce such an order, and the only question now for our consideration is, can we do so? The

confirmation of the award of the jury amounts to a final judgment of the court for the amount of the assessment. It cannot be questioned collaterally in any subsequent proceeding. The rights of all parties then become fixed; it is a judgment of the Court of Quarter Sessions for the payment of money. It is an inherent right in every court to enforce its own judgment, and the payment of such judgments is enforced by an order. Such orders have been issued by the Court of Quarter Sessions from the foundation of the government: Price v. County Commissioners, 1 Wh. 1; Commonwealth v. Commissioners, 2 Wh. 286, and can be enforced by virtue of the act of April 15, 1834, § 5, P. L. 538. The Court of Quarter Sessions, although it has no power to issue the prerogative writ of mandamus, has a right to issue an order to enforce a judgment resulting from an assessment of road damages, standing on its records: In re Sedgeley Avenue, 88 Pa. 509; Spring Street, 112 Pa. 262; Kensington Turnpike, 97 Pa. 276.

We are of opinion that the county is liable to pay these damages, and that the Court of Quarter Sessions has power to issue an order requiring their payment. We must, therefore, approve and confirm the report of the jury; and, further, we direct an order to issue to the county treasurer, to pay to the respective parties entitled thereto, the damages awarded by said report, out of the county funds in his hands, when properly advised that said streets and alleys have been duly opened as provided for by the act relating to roads and bridges in the county of Chester, approved February 13, 1869, P. L. 174.

A final decree having been entered in accordance with the foregoing opinion, the county of Chester took this writ, specifying that the court erred:

1. In making absolute the rule granted August 8, 1887.

2. In the decree of November 7, 1887, directing that an order issued to the treasurer of Chester county to pay to the parties entitled the damages awarded by said report, etc.

*Mr. Alfred P. Reid*, for the plaintiff in error:

I. The county is not liable for the damages assessed by the viewers, unless made so by some legislative enactment.

1. Sections 7, 8, and 9, act of June 13, 1836, P. L. 556, pro-

vided that after a road was opened, under its provisions, the land-owner could have his damages assessed and that they should be paid out of the county stock. But, that these provisions applied only where the road was laid out under the authority of the act of 1836, and the court had jurisdiction under that act, is shown by the resolution of May 29, 1840, P. L. 752, which declared that said sections should be construed to apply to damages " sustained from the location and opening of a road under any special act of assembly, unless where the same is otherwise provided for by law." In the case at bar, the streets and alleys were not laid out and opened under the act of 1836, nor under any special act of assembly.

2. Nor had the Court of Quarter Sessions any jurisdiction under the act of 1836, at any stage of these proceedings, either in the laying out or opening of these streets and alleys, or in the assessment of damages, as was the case in Mercer Borough Road, 14 S. & R. 447; Newville Road, 8 W. 172; Sharett's Road, 8 Pa. 89. The borough authorities ordained the streets and alleys, determined when they should be opened, and petitioned the court for the appointment of a jury of view, under the act of April 22, 1856, P. L. 525. The act of 1836, therefore, does not cover the case, and there being no other legislative enactment making the county liable, the court had no power to make the order complained of.

II. The general borough acts make the corporations taking the property liable.

1. It is the policy of all recent legislation to subject highways in boroughs to municipal control: Norwegian Street, 81 Pa. 352. The general borough act of April 3, 1851, P. L. 320, in its §§ 2 and 3, vests in the corporate officers the power to survey, lay out, enact and ordain roads, streets, lanes, alleys, etc., to regulate the same, to enter upon lands, etc., and to make official drafts or plans thereof; these powers, however, to be subject to the restrictions contained in § 27 of the act. But no authority is given by the act of 1851 to take private property for any other purpose than for streets. Hence, unless the law provides that the compensation to the owner of property taken for its streets, is to be paid by some other body, the borough must pay all damages given by the law and the constitution.

2. The proviso to paragraph v. of § 27 of the act of 1851, providing that " all damages beyond the value of the land thus appropriated to public use, shall be paid by the corporation, and the jury shall separately assess the same," does not say that the county shall be liable for the value of the land taken. Nor is it a necessary inference that the land was to be paid for by any one, for the commonwealth has a constitutional right to authorize the laying out of a road without making compensation for the soil itself: McClenachan v. Curwen, 6 Binn. 509; Feree v. Meily, 3 Y. 153; Commonwealth v. Fisher, 1 P. & W. 462; Plank Road Co. v. Thomas, 20 Pa. 91; Workman v. Mifflin, 30 Pa. 370; East Union Tp. v. Comrey, 100 Pa. 362.

. 3. It is suggested that under the act of 1851, streets were to be opened under the act of 1836, and that the county would therefore be liable for all damages assessed thereunder not otherwise provided for. But the act of 1851 introduced a new rule upon the subject of damages, inconsistent with that under the act of 1836 and therefore repealing it: Ledlie v. Navigation Co., 6 Pa. 392; Commonwealth v. Cromley, 1 Ash. 181; Johnston's Est., 33 Pa. 511; Gwinner v. Railroad Co., 55 Pa. 127. The value of the land taken is a standard wholly different from the one laid down in Newville Road, 8 W. 177. But the supplement of 1856, under which this proceeding was had, introduces still another method and rule for assessing the damages and for their payment: Norwegian Street, 81 Pa. 352; Pittsburgh v. Irwin, 85 Pa. 424.

III. The constitution of 1874, § 8, article XVI., makes boroughs expressly liable for these damages. " Municipal and other corporations and individuals invested," etc. Counties are not municipalities that may take land for highways or streets: Lamoreux v. Luzerne Co., 116 Pa. 195; Airy Street, 113 Pa. 287; but boroughs are such municipalities: New Brighton v. U. P. Church, 96 Pa. 331; Bachler's App., 90 Pa. 208; Hendrick's App., 103 Pa. 358; Cummings v. Williamsport, 84 Pa. 472.

*Mr. J. Frank E. Hause, Mr. Arthur T. Parke* (with them *Mr. R. Jones Monaghan*), for the defendant in error:

I. Under the general road law of the commonwealth, the county is liable for the damages here assessed, unless this liability has been removed by act of assembly.

Arguments.

1. The county was in terms so made liable by §§ 8 and 9, act of June 13, 1836, P. L. 556. The provisions of this act apply not only to roads in the county at large, but to streets and alleys in boroughs as well. Hence, where it is desired to lay out and open a street in an incorporated borough, the methods provided by the act of 1836 are applicable, unless the charter of the corporation supplies others, and so far, if partially supplied, as they are unsupplied: Callowhill St., 32 Pa. 363; Somerset and Stoystown Road, 74 Pa. 63; Sharett's Road, 8 Pa. 89; Clinton Street, 2 Brewst. 601; Milton Road, 40 Pa. 300; Smedley v. Erwin, 51 Pa. 445; Mercer Borough Road, 14 S. & R. 447; Newville Road, 8 W. 172; Schuylkill Co.'s App., 38 Pa. 462. Our contention is confirmed by the language of the resolution of May 29, 1840, P. L. 752, which was passed ex majora cautela, to declare the law as it was interpreted by the courts, and not to make a new rule on the subject: Sharett's Road, 8 Pa. 89; East Union Tp. v. Comrey, 100 Pa. 362.

II. The general borough act of April 3, 1851, P. L. 320, to which the borough of Parkesburg, incorporated by act of March 1, 1872, P. L. 195, is subject, does not remove this liability of the county for the damages assessed.

1. It is to be observed that the act of 1851, nowhere empowers a borough "to open" streets or alleys. The manner of opening is designated by paragraph III. of § 27 of the act: "Like proceedings shall be had for the opening . . . . . of the roads, streets, etc., . . . . . laid out and ordained . . . . . as are provided by law for the laying out and opening of public roads within this commonwealth." Even in the absence of this provision, under the cases cited, supra, the same method would have been followed. Hence, this provision is simply declaratory of the then existing law. Schuylkill Co.'s App., 38 Pa. 462, is the end of the county's argument as to the effect of the act of 1851.

2. Whether the proviso of paragraph V. of § 27 of the act of 1851, imposes the payment of "the value of the land appropriated" upon the county, is not material. The county was already liable. The act changed the general road law in two particulars only: (a) In permitting the damages assessed to be divided into two classes; (b) in imposing upon the borough

the burden of paying one of these classes of damage. The proviso referred to expressly negatives the idea that any change was to be made in the general road law with respect to the damages for the land appropriated.

III. The act of April 22, 1856, P. L. 525, a supplement to the act of 1851, does not relieve the county from liability.

1. By the act of 1856, the provisions of prior laws have been altered and supplied in two respects: (*a*) The jury must now consist of seven disinterested freeholders of the borough; and (*b*) this jury is authorized to make assessments for contribution upon properties benefited. But the provision in the act of 1851, that the jury must separate the damages into two kinds, (*a*) the value of the land appropriated, and (*b*) the damages beyond the value of the land appropriated, remains untouched. Not a single expression is to be found relative to the liability for damages; that subject necessarily remains as before. The county therefore must pay for the value of the land appropriated, and the borough the damages beyond that.

2. But it is enough to say that there is not in the act of 1856 the slightest suggestion, directly or indirectly, of an intention to change the statutory rule theretofore existing, as to either the measure of damages, or as to who shall pay them when assessed. The statute simply says nothing whatever on either subject, but leaves them where they were under the act of 1851.

IV. Not only is there no express repeal of the liability imposed upon the county by the act of 1836, but that liability is directly recognized.

In paragraph III. of § 27 of the act of 1851, it is provided that, " upon any amounts to become due by borough corporations for the purposes aforesaid, interest shall be allowed," etc. The county was not liable for interest on damages awarded against it: Stewart v. The County, 2 Pa. 340. The proviso to paragraph v., § 27, is as follows: " Provided that all damages assessed beyond the value of the land thus appropriated to public use shall be paid by the corporation, and the jury shall separately assess the same." If it was intended by this clause to relieve the county from liability beyond the mere value of the land, to remove this liability from one place to another, the clause is intelligible, otherwise, not.

V. The constitution of 1874 has no bearing upon the liability for the damages assessed in this case.

The constitutional provision referred to was framed to redress wrongs and hardships that existed without remedy: Chester Co. v. Brower, 117 Pa. 647 ; and not to remove a pre-existing liability from the shoulders of one corporation and settle it on those of another.

Opinion, Mr. Justice Clark:

The borough of Parkesburg was incorporated by a special act of assembly approved March 1, 1872, P. L. 195, subject to the provisions of the general borough law of April 3, 1851.

By the second section of the general borough law the corporate authorities had power to *survey, lay out, enact, and ordain* such roads, streets, lanes, courts, and common sewers as they may deem necessary, and to *provide for, enact, and ordain* the widening and straightening of the same ; to this extent the act of 1851 supersedes the general road law of 1836 ; the power to lay out and ordain streets, alleys, etc., beginning and ending within the corporate limits, is exclusively in the borough authorities : Somerset and Stoystown Road, 74 Pa. 61 ; South Chester Road, 80 Pa. 370.

But the corporation has no authority under that act to open such streets without the owner's consent, or until just compensation shall be made to the owners of the property through which they pass.   The third clause of the 27th section of the same act, therefore, provided that "like proceedings shall be had for the *opening, widening,* and *straightening* of the roads, streets, etc., laid out and ordained, in accordance with the provisions of this act, as are provided by law for the laying out and opening of public roads, within this commonwealth;" that is to say, the streets, or the widening or straightening thereof, having been surveyed, enacted, and ordained, by the burgess and council, must be opened, widened, and straightened, upon an assessment of damages, under proceedings, by view and review, in the Court of Quarter Sessions of the proper county.   If the owner of private property, on the line of the street, either for a consideration agreed upon, or without compensation, consent that the street may be opened as laid out and ordained, the corporate authorities may at once proceed

to open, and thereupon the street shall become a lawful public highway; otherwise, however, the corporation is obliged to resort to the courts for an assessment of damages according to law.

The question we are now called upon to decide is, by whom shall the damages thus assessed be paid. The contention of the plaintiffs in error is, that the damages are assessed against, and must be paid by the corporation; whilst the defendants in error maintain that the value of the land taken must be paid by the county, and the damages assessed beyond the value of the land by the corporation, and that in all cases the jury must separately assess the same.

The 27th section of the act of April 3, 1851, provides, as follows : " The powers and duties of the corporation shall be *subject* to the following provisions : (1) Private property shall not be taken for the uses and purposes of the corporation without consent of the owner, or until just compensation shall be made therefor, according to the laws of this commonwealth." Private property shall not be " taken,"—taken by whom ? By the corporation. It is the corporation, in such case that proposes to take the property, and it is to the corporation, therefore, as we understand it, that this restriction and requirement of the statutes apply. The duty to pay attaches, of course, to the party proposing to take the property. " The powers and duties of the corporation " are expressly " subject " to this provision of the statute; that is to say, the borough may not exercise the power without performing the duty enjoined. The 27th section further provides, " that such streets, lanes, and alleys, footwalks and pavements shall not be opened for public use until the damages shall be liquidated, and upon any amounts due, or to become due, by borough corporations for the purposes aforesaid, interest shall be allowed and paid from the date of the adjudication of said damages."

Moreover, as the streets are laid out by the corporation wholly within the limits of the corporation, " for the uses and purposes of the corporation," the inference would seem to be irresistible, that the corporation should make the compensation. It seems incredible that the legislature should have intended that the county should be held to compensate private owners for land taken in a proceeding over which it has no control, in which it has no part, and of which it has no notice.

But if there was ever any doubt as to the liability of municipal corporations in such cases, the 8th section of the 16th article of the constitution must certainly settle the question. This section provides : " *Municipal and other corporations*, and individuals invested with the privilege of taking private property for *public* use, *shall make just compensation* for property taken, injured, or destroyed by the construction or enlargement of their works, highways, or improvements, which compensation shall be paid or secured before such taking, injury, or destruction." If this does not impose payment of the damages for property taken, in the construction of highways, upon the municipality taking it, it would be difficult to suggest language which would be adequate for that purpose. In the case of a public road, laid out under an order of the Quarter Sessions, the county is responsible for the damages under the act of 1836, and there no such restriction exists ; the road may be opened without prepayment of the damages ; indeed, the assessment thereof cannot be made until the road is opened, and then proceedings may be instituted at any time within one year.

Whilst the exclusive power of the authorities of a borough to enact and ordain streets, alleys, etc., under the act of 1851, is undoubted, by streets, alleys, etc., " therein," is meant such only as begin and end within the limits of the municipality. This exclusive provision does not extend to public roads, laid out through or to a point within the limits of a borough, of which only a part is within the borough lines. The Court of Quarter Sessions has undoubted authority in such cases under the general road law of 1836 : Somerset and Stoystown Road, *supra*. In such cases, however, it is provided by the 27th section of the act of 1851, as follows : " That every jury appointed to view, review, lay out, widen, straighten, or to vacate any road, or part of a road, in any borough in this commonwealth, shall have due reference to the town plot, herein authorized and directed, and to the general arrangement, plan, convenience, and advantage of the borough, and shall set forth the facts fully in their report." Thus it is apparent that whilst, under the act of 1851, the corporate authorities have exclusive power to lay out, enact, and ordain streets, etc., within the corporate limits, the county, or the state rather, through the

instrumentality of the Quarter Sessions, may still proceed, under the act of 1836, to lay out and open roads through or into any part of any borough for public use. In either case, however, the damages are assessed by a jury of the Quarter Sessions, and the roads or streets, as the case may be, when duly opened, are public highways " over which the corporation shall exercise jurisdiction " under the provisions of the act of 1851.

But by the fifth clause of the 27th section of the act of 1851, it is further provided, " that it shall not be lawful for any owner, or owners, etc., to erect any buildings or make any improvements within the lines of the roads, streets, etc., laid out, etc., or ordained to be laid out, after due notice thereof; and if any such improvement be made, no allowance shall be made therefor in the assessment of damages, but the loss or injury sustained by the laying out of the same shall be determined by agreement of the parties," or by a jury of the Quarter Sessions, as directed by the act. The proviso applies generally to all roads, streets, etc., within the borough, whether laid out under the act of 1836, in the manner already stated, or under the act of 1851. The damages for laying out public roads are in general imposed on the county, and when laid out partly within a borough the same rule obtains; in such case the land of private owners is not taken by the municipality but by the state, and in the absence of any provision to that effect, there would be no liability on part of the municipality. But as the viewers in such cases are bound to have reference to the town plot and to the general arrangement, plan, convenience, and advantage of the borough, as to route, grade, etc., it was considered proper that the municipality should bear a just proportion of the damages; hence, it is a general provision of the act of 1851 that all damages assessed beyond the value of the land thus appropriated to public use shall be paid by the corporation, and that the jury shall separately assess the same; and as the officers of the municipality have peculiar opportunities for knowing that erections or improvements are about to be made, they are thus charged with the duty of giving notice of the laying out of the road or street. This may probably explain the connection in which this provision is found in the body of the act.

By the act of April 22, 1856, P. L. 525, however, further provision was made as follows : " Whenever the burgesses and town council of any borough shall open, or be about to open, any streets or alleys therein, or to widen or extend the same, it shall be lawful for said burgesses, etc., to apply by petition to the Court of Quarter Sessions of the peace of the proper county, setting forth the facts, and describing the locality of such streets or alleys, and praying said court to appoint seven disinterested freeholders of such borough, who, after being first duly sworn, etc., shall proceed to view the premises described in said petition, having regard to both the advantages and disadvantages caused to the several properties along the line of and adjoining said streets and alleys, and shall assess and allow to all persons injured thereby such damages as they shall have sustained respectively over and above all advantages ; and shall also make assessments for contribution upon all such properties as shall be benefited by the opening, etc., of said streets, etc., such sums respectively as they may have been benefited over and above all disadvantages."

It will be observed that this act of 1856 only applies to the opening of streets by the municipal authorities, in which case, as we have seen, the sole liability for damages is assumed by the borough, and we are of opinion that the provision of the act of 1851, as to the separate assessment of the value of the land taken, has no application in a proceeding under this act. It is plain, that the act of 1856 contemplates an assessment of all the damages against the municipality ; the estimate of the advantages and the disadvantages, the assessment of damages to properties injured, and for contribution upon properties benefited, is practically inconsistent with any other theory. It seems incredible, if any distinction is to be observed between the value of the land taken and other injuries sustained, that there was no provision to that effect in this act. The duties of the viewers are most minutely and particularly stated, and there is not the slightest suggestion to this effect. Cummings v. Williamsport, 84 Pa. 472, was a case under this act, and it was there held, that in estimating the damages sustained by the opening of a street, the proper measure of damages is the difference between what *the property* would bring in the market before the improvement, and what after the improvement was made,

without reference to the purposes for which it may be used. No separate assessment was there made, none suggested, and the measure of damages adopted is wholly inconsistent with that mode of assessment.

As the streets and alleys, laid out and about to be opened in the borough of Parkesburg, were laid out, enacted and ordained by the burgess and council of that borough, and the proceeding to assess the damages is under the act of 1856, we are of opinion that the county of Chester cannot be held for any part of the damages.

> The proceedings of the Court of Quarter Sessions of Chester county are therefore reversed.