# In re Vacation of Osage Street.

Where a street has been laid out and dedicated to public use, in an incorporated borough, Courts of Quarter Sessions have no power to vacate said street, as such power is vested in the municipal authorities alone.

April 1st 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Certiorari to the Court of Quarter Sessions of *Northampton county :* Of January Term 1879, No. 210.

On June 3d 1878, certain inhabitants of the borough of South Bethlehem petitioned the court to vacate a certain road. Viewers were appointed, who reported that the road should be vacated. It was agreed that the road vacated was a street dedicated to public use, and an adopted street of the borough of South Bethlehem, and known as Osage street. To the report of the viewers the following exceptions were filed :

1. This court has no jurisdiction to vacate streets in an incorporated borough, and this proposed vacation appears on its face to be the vacation of a street in South Bethlehem, an incorporated borough.

2. This court has no jurisdiction to vacate any street in a borough that is dedicated to public use, and this street called Osage street appears by the records of this county to be a street of South Bethlehem, an incorporated borough, and to be dedicated to public use by Charles Hacker, as well as by the deeds on record showing sales of lots bounding on this street.

[In re Vacation of Osage Street.]

On February 19th 1879, the court overruled the exceptions and confirmed the report; which action was assigned for error by the exceptant, who took this writ.

*W. E. Doster*, for appellant.—The Court of Quarter Sessions had no authority to vacate the street: Act June 13th 1836, Pamph. L. 558, sect. 22; Allentown Road, 5 Whart. 442. The petitioners contended that the Act of April 21st 1846, Pamph. L. 416, repealed the Act of June 13th 1836. But even if the Act of 1846 did repeal, by implication, the Act of 1836, it could not repeal the Act of May 3d 1855, Pamph. L. 422, which was enacted fourteen years later, and which continues to exclude streets in boroughs from the power of the Quarter Sessions. It is manifest in these acts that the legislative intent was to leave the regulation of streets in boroughs with the municipal authorities, who are responsible for their condition.

*W. W. Schuyler, contra.*—By the authority conferred by the Act of 1846, the Quarter Sessions has the power to vacate *all roads.* Streets were included in these terms: Sharett's Appeal, 8 Barr 92. If said courts have no power to vacate streets in cities and boroughs, there is no power anywhere to do so, for no such power is conferred upon boroughs. The Act of 1855 does not apply. That act was passed to meet a special case: Road in Greenwich Township, 1 Jones 186.

Mr. Justice WOODWARD delivered the opinion of the court, May 5th 1879.

For the purposes of this litigation, the two material facts out of which the controverted legal point arose, were agreed upon by counsel in the court below. Osage street was dedicated to the use of the public by Charles Hacker, by deed executed on the 21st of November 1864, and duly recorded, and was adopted as one of the streets of South Bethlehem, by a resolution of the town council, on the 20th of September 1875. On the 3d of June 1878, a petition to vacate the street was presented to the Court of Quarter Sessions. Viewers were appointed, who reported in favor of the vacation prayed for, and on the 19th of February 1879 their report was confirmed. The complainants sued out this writ, and have brought up the proceedings for review, upon the allegation that they were not within the jurisdiction of the court.

By the 18th, 19th, 20th and 21st sections of the Act of the 13th of June 1836, authority was given to the Courts of Quarter Sessions of the Commonwealth, within their respective counties, " to change or vacate the whole or any part of any private or public road laid out by authority of law;" to vacate roads laid out and confirmed, but not opened, on the petition of a majority of the ori-

ginal petitioners; to change or supply by a new road the route of any state road laid out by direction of any Act of Assembly, and vacate any part of the state road thus supplied; and to vacate any part of any state road supplied by a substantial and permanent turnpike. The 22d section embodied a proviso that nothing contained in the act should give authority to any court to vacate any lane, street or highway within any city, borough, town-plot or any town or village laid out by the late proprietaries, or by any other person, and dedicated to the public use. The Act of the 21st of April 1846 extended the powers of the courts, in the vacation of public and private roads, to all roads, whether laid out by authority of law or existing by pre-emption or lapse of time; "and generally to all roads, except private roads resting upon express grant," the evidence of which being still in existence. The Act of the 3d of May 1855 increased the powers of the courts still further by authorizing them to change or vacate the whole or any part of any public or private road laid out by authority of law, and opened in part, subject to the proviso that it should not apply to state roads authorized by a special law, or to, any street, lane or road within any incorporated city or borough.

Under this legislation, and notwithstanding the act regulating boroughs, passed the 3d of April 1851, it was insisted upon at the argument on behalf of the petitioners, that the Courts of Quarter Sessions may proceed, in the forms prescribed by the Act of 1836, to vacate any street in any city, town or borough in regard to which special statutory provision has not been made. It was said that the Act of 1855 was passed to meet the decision of this court in the Road in Greenwich Township, 1 Jones 186, where it was held that the Quarter Sessions could not vacate a road partly opened, and that the proviso excepting streets in cities and boroughs from its operation extended only to cases for which it was intended to provide. This is undoubtedly true, but the fact that the proviso was inserted indicates that the 22d section of the Act of 1836 was in the legislative view, and that the legislature of 1855 did not regard that section as having been repealed or supplied by a former legislature. The Act of 1846 was "a supplement to the act entitled 'an act relating to roads, highways and bridges.'" It extended the powers of the courts "to vacate public and private roads" to "all roads"—to those "existing by pre-emption," as well as to those specified in the Act of 1836 as roads "laid out by authority of law"—"and generally to all roads, except private roads resting on express grant." But jurisdiction over the highways of cities and boroughs, and over dedicated streets in town-plots, towns and villages had been expressly withheld by the Act of 1836. The subjects of that act, by the introduction of the 22d section, were confined to country roads. Is it possible that the Act of 1846 was designed to act upon a new class of subjects, to repeal the 22d sec-

tion of the Act of 1836 by implication, and, without reference or specification, to add to the jurisdiction over country roads jurisdiction over city and borough streets? This would be a very comprehensive implication to be drawn from the language of a statute, the natural and apparent purpose of which was merely to enlarge the members of a class to which a former statute had been applied. The word "road," in a proper connection, may be fitly used to designate a city or borough street: Moyamensing Road, 4 S. & R. 106; Sharett's Road, 8 Barr 89. Regarding the Acts of 1836 and 1855 as *in pari materia* with the Act of 1846, it seems incredible that the word could have been used in a sense or for a purpose that would embrace a class of subjects of such vast importance as the highways of the municipalities of the Commonwealth. The adjustment of a city or borough plan requires scientific knowledge, a pervading system thoroughly understood by official agents, and familiarity with diversified and minute details. The vacation of a single street could be at a point so vital as to derange the graduation, drainage and sewerage of an entire borough. Legislation should be very clear indeed to require that the health, convenience and comfort of a whole community should be put to the hazard of the action of six gentlemen casually selected from country townships, adjacent to a town, to deal with an isolated detail of a system which they could touch only to injure and perhaps destroy.

That the Courts of Quarter Sessions have no original jurisdiction in the vacation of borough streets, appears manifest from the terms of the Act of the 3d of April 1851. It is true that in the second section, enumerating the powers of borough officers, the second clause authorizes them only to survey, lay out and ordain roads, streets, lanes, alleys, courts and common sewers, and to provide for widening and straightening them. The word "vacate" does not occur. But all the provisions of the act are to be considered. The fourth clause of the second section declares that those officers "shall regulate the roads, streets, lanes, alleys, courts, common sewers, public squares, common grounds, footwalks, pavements, gutters, culverts and drains, and the heights, grades, widths, slopes and forms thereof; *and they shall have all other needful jurisdiction over the same.*" The 27th section fixes the time when and the terms and forms on and in which the court shall have the right to intervene. By the third clause of that section, complaint may be made to the Quarter Sessions by any person or persons aggrieved by any regulation in relation to the laying out, widening or straightening of highways, or to "the opening, grading *or other regulations* thereof," and thereupon the court are required to take such order as may be just and reasonable. The first proviso to this third clause directs that the same proceedings shall be had as those provided for the laying out and opening of the public roads of the Commonwealth. The terms of the second proviso are: "That every

[In re Vacation of Osage Street.]

jury appointed to view, review, lay out, widen or straighten, *or vacate*, any road or part of a road in any borough of this Commonwealth, shall have due reference to the town-plot herein authorized and directed, and to the general arrangement, plan, convenience and advantage of the borough, and shall set forth the facts fully in their report." No jury can have existence until, upon the complaint of a citizen, the action taken by the town council shall be brought into the court for review. The words "to vacate" in the second clause of the proviso are to be read in connection with the rest of the third clause of the 27th section, as well as in connection with the second and fourth clauses of the 2d section. The vacation of a street was as much in contemplation as the laying out and opening of a street when the legislature made provision of means by which the proceedings of the council should be revised. The words cannot be relegated to the Act of 1846, and read into that, in order to give them efficiency, nor can they be stricken out. As they stand, they are aids to indicate the scope and purpose of the Act of 1851 in an unmistakable way.

Proceedings reversed, and petition dismissed.