## In Re: Borough of Bellevue.

428

Argued May 4, 1933.

Before TREXLER, P. J., KELLER, CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*George E. Morcroft, Jr.,* for appellant.

*Elverton H. Wicks,* for appellees.

Opinion by Parker, J., October 2, 1933:

On August 11, 1932, pursuant to the provisions of the Act of May 8, 1854, P. L. 645 (36 PS 418), more than twelve freeholders of the vicinity made application to the court of quarter sessions of Allegheny County for the vacation of Gallagher Street, a public highway in the Borough of Bellevue, that county, alleging that the street had become useless to the public and those having land bounding thereon, and prayed the court to decree the vacation thereof. An answer was filed by the borough questioning the jurisdiction of the court of quarter sessions for the reason that Gallagher Street was situated wholly within the corporate limits of the borough and, as a consequence, the council of the borough had exclusive jurisdiction of proceedings to vacate such a street, and alleging that the street had not, as a fact, become useless. On the return of the rule, testimony was taken and the court ordered the street vacated and closed, whereupon an appeal was taken to this court by the borough.

We will state the primary facts developed at the hearing, as to which facts there was not any substantial dispute. Gallagher Street, dedicated to public use and accepted and opened by the municipality, lies wholly within the Borough of Bellevue and extends from Riverview Avenue across Ohio River Boulevard to low-water mark on the Ohio River. It does not form any part of a road extending beyond the borough limits. In its approach to the river, the street leads down a steep embankment across the tracks of the P. F. W. & C. R., so that it has never been used by vehicular traffic for the greater part of its length. There had been erected on the street a board walk, cinder walks, and steps leading down the embankment, but for twelve years pedestrians have not used the same. In 1897 or 1898, the Borough of Bellevue constructed a twelve-inch sanitary sewer, an integral part of the borough sewer system, throughout the length of

Gallagher Street, furnishing an outlet for sewerage from residences in the vicinity of the street to the Ohio River. This sewer has been in constant use and is now used by the borough. The court provided as a condition of its order vacating the street that the abutting property owner or owners should "execute and deliver proper assurances in writing to be recorded, by the terms of which the said Borough of Bellevue shall be granted an easement upon the land occupied by said Gallagher Street for the purpose of maintaining the necessary manholes or sewer openings upon the surface as may be required for the proper maintenance and repair of the sewer now traversing the land heretofore occupied by said Gallagher Street." No provision was made for laying additional or larger sewers on the street.

The first contention of the appellant is that the council of the Borough of Bellevue had exclusive jurisdiction of proceedings to vacate streets. The appellee and court below were of the opinion that the borough authorities and the court of quarter sessions of Allegheny County had concurrent jurisdiction. Numerous dicta in the decisions of the Supreme and Superior Courts support the position of the appellant. In Vacation of Osage Street, 90 Pa. 114, 117, Mr. Justice Woodward, said: "The adjustment of a city or borough plan requires scientific knowledge, a pervading system thoroughly understood by official agents, and familiarity with diversified and minute details. The vacation of a single street could be at a point so vital as to derange the graduation, drainage and sewerage of an entire borough. Legislation should be very clear indeed to require that the health, convenience and comfort of a whole community should be put to the hazard of the action of six gentlemen casually selected from country townships, adjacent to a town, to deal with an isolated detail of a system which they could touch only to injure and perhaps destroy. That the courts

of quarter sessions have no original jurisdiction in the vacation of borough streets, appears manifest from the terms of the Act of the 3d of April, 1851.''

In West Liberty and Knoxville Roads, 20 Pa. Superior Ct. 586, we held that since the Act of April 3, 1851, P. L. 320 (General Borough Act), the court of quarter sessions has no jurisdiction to lay out a public road which lies wholly within the borders of two adjoining boroughs, and that in this respect the Act of June 13, 1836, P. L. 555, has been superseded.

In the case of McCall v. D. L. & W. R. R. Co. and Duryea Borough, 71 Pa. Superior Ct. 508, 519, our Brother Judge KELLER, after an exhaustive discussion of the various acts involved, said: ''Thus it is apparent that, whilst under the Act of 1851, the corporate authorities have exclusive power to lay out, enact and ordain streets, etc., within the corporate limits, the county, or the State rather, through the instrumentality of the quarter sessions, may still proceed, under the Act of 1836, to lay out and open roads through or into any part of any borough for public use.''

Admitting the force of these decisions, the appellee and the court below suggest that in the cases to which we have just referred the courts did not consider the effect of the Act of 1854, under which the application is here made, and that when application is made under that act, the jurisdictions of the borough and the court of quarter sessions are concurrent. This makes necessary a review of the decided cases.

The court of quarter sessions of the proper county has authority under the Act of June 13, 1836, P. L. 551, §18 (36 PS 391), to inquire of and vacate the whole or part of any public road when the same shall have become useless, inconvenient, or burdensome; whether the same was originally laid out by authority of law or existed by prescription or lapse of time: Act of April 21, 1846, P. L. 416 (36 PS 409); also, to vacate roads laid out but not opened: Act of June 13, 1836,

§19, P. L. 551 (36 PS 421); also, roads opened in part only: Act of May 3, 1855, P. L. 422 (36 PS 413). "But these powers, by the express words of the Acts of 1836 and 1855, are not exercisable in the vacation of any street or highway within the limits of an incorporated borough or city; and, as the Act of 1846 is in pari materia with the Acts of 1836 and 1845, it has been held, that the court of quarter sessions have no power under that act to vacate a street in a borough or city, dedicated by the owner to the public use:. In re Vacation of Osage Street, 90 Pa. 114;" Vacation of Henry Street, 123 Pa. 346, 353, 16 A. 785. The Act of April 3, 1851, P. L. 320 (The General Borough Law), and the Act of April 22, 1856, P. L. 525, a supplement to the former, superseded and repealed the General Road Law as to streets and alleys within the limits of the borough. "But by streets and alleys 'therein'— that is, within the borough limits—must necessarily be meant such as begin and end therein, and not such public roads as are or may be opened through the borough, of which a part only is within the borough limits": Somerset and Stoystown Road, 74 Pa. 61, 64

In Vacation of Henry Street, supra, the street proposed to be vacated was located in the City of Allegheny, and the application was made, as here, under the Act of 1854. It was held that proceedings under that act were not subject to the restrictions of the Acts of 1836 and 1855 as to streets, lanes or roads within incorporated cities or boroughs, and that the Act of 1854 was not in pari materia with the Acts of 1836 and 1855. It was further said (p. 354): "Whenever, therefore, a case is presented covering the conditions specified in this act, whether in an incorporated city or elsewhere, the court of quarter sessions of the proper county must take cognizance of it. If this proceeding had been in the forms prescribed by the Act of 1836, it is plain that it would be irregular and could not be sustained." In that case, it was also con-

tended that the Act of 1854 was repealed by the Act of May 23, 1874, P. L. 230, giving cities control of the opening, widening, narrowing, vacating, etc., of city streets. But the court there held, with reference to such contention, that as the City of Allegheny had not accepted the provisions of the latter act, it was not applicable, concluding with the statement: "It will be time enough to consider those questions when they are properly presented."

The principles announced in the Henry Street case were followed in Swanson Street, 163 Pa. 323, 30 A. 207, but it was not suggested that there was any municipal legislation repealing or superseding the Act of 1854. Consequently, the cases involving the vacations of Henry Street and Swanson Street are authority only for the proposition that the Act of 1854 is in force if there is not some inconsistent or incongruous legislation repealing or superseding it. This leads us to one of the important questions in the case, which is whether the Act of 1854 is superseded or repealed by "The General Borough Act" of May 4, 1927, P. L. 519 (53 PS 13561), as amended by Act of June 9, 1931, P. L. 386.

The General Borough Act of 1927 provides that boroughs may on petition (§1610, 53 PS 13561), or without petition (§1601, 53 PS 13531), open or vacate streets and alleys or parts thereof. It prescribes the procedure for presentation of petitions and enacting of ordinances for such purposes and provides for the assessment of damages and benefits against properties benefited; or, if they cannot be assessed against such properties, that they may be placed on the municipality. There is a provision for appeal in certain cases to the court of common pleas, and for the appointment of viewers to assess damages by that same court. It is most apparent that the differences in the proceedings thus provided for and those under the General Road Law of 1836 or the Act of 1854 are very

important, and the different methods are inconsistent. They affect the same interests in a different way. The change in the location of a street and the opening or closing of a street entirely in a borough are of no advantage to the county as a whole, but are of special interest to abutting owners and the municipality. Consequently, damages are assessed in a different manner and placed upon different persons under the two methods of procedure. We cannot conceive that it was . the intention of the legislature that these two inconsistent and incongruous methods should be enforced at the same time when they affect roads or streets located entirely within the limits of a borough. "The repeal of statutes by implication is certainly not favored. Where there are two affirmative statutes on the same subject, there must be a clear inconsistency or repugnancy between them in order that the later one shall produce this result . . . . . . Yet a subsequent affirmative statute is a repeal by implication of a former one made concerning the same matter, if it introduces a new rule upon the subject and is evidently intended as a substitute for the former law: Johnston's Estate, 9 Casey 511": Somerset and Stoystown Road, supra.

Additional force is given to this position by the terms of the repealing section of the Borough Code. It is provided by §3301 (53 PS 15281) that "all other acts or parts of acts of assembly supplied by, inconsistent with, or appertaining to the subject matter covered by this act, are hereby repealed. It is the intention that this act shall furnish a complete and exclusive system for the government and regulation of boroughs." The act would therefore seem by its express terms to contemplate a repeal or superseding of the earlier act. "Where a statute contemplates in express terms that its enactments will repeal earlier acts, by their inconsistency with them, the chief argument or objection against repeal by implication is re-

moved, and the earlier acts may be more readily treated as repealed'': Endlich on the Interpretation of Statutes, §206. The construction we have adopted is in harmony with the decisions construing the General Road Act. All that was said by the court in Somerset and Stoystown Road, supra, with relation to the repeal of the General Road Law by the Borough Act of 1851 is applicable to the situation we are considering, and that case is controlling here.

Our attention, however, has been called to the local act of May 10, 1871, P. L. 704, wherein it is provided ''that the court of quarter sessions of Allegheny County shall have power to vacate the whole or any part of any street, lane or alley laid out in any borough incorporated therein, in case the same has never been opened or used by the public or has been supplied or rendered unnecessary by the opening or laying out of a street or highway in the place thereof.'' This local act was considered by the Supreme Court in Sterrett Twp. Rd., 123 Pa. 231, 16 A. 777, and it was held that the jurisdiction of the court of quarter sessions of Allegheny County to vacate a road under the Act of May 3, 1855, P. L. 422 (part of the General Road Law), was ousted by the incorporation of a borough; yet it was ''eo instante restored by the special act of May 10, 1871, P. L. 704.'' We also note that in the repealing clause of the General Borough Act of 1927 (§3301), it is provided: ''But nothing contained in this act shall be construed to repeal any local or special laws.'' We have not been able to discover any repeal of this local act, and counsel for both appellant and appellee have assumed that it is in force.

As, under the uncontradicted evidence, Gallagher Street was opened and used, this local act would not be applicable unless that street was ''supplied or rendered unnecessary by the opening or laying out of a street or highway in the place thereof.'' Such fact was not averred in the petition to vacate. The only

witness called at the hearing was the borough engineer. From his testimony it appeared that Gallagher Street began at Riverview Avenue and crossed the Ohio River Boulevard fifty feet to the south and thence extended four hundred feet further south to the Ohio River. A portion of the street fifty feet in length between Riverview Avenue and Ohio River Boulevard had been supplied by a new street. There was not any evidence to show that any street had been opened which supplied the portion of Gallagher Street extending from the Ohio River Boulevard to the Ohio River. The engineer gave as his opinion that the surface of the street was not necessary "for the accommodation of the travel of the public" at the time he gave his evidence, but stated that he did not know what use the borough would make of it in the future, and that it was being used by the borough for the maintenance of a twelve-inch sanitary sewer throughout its entire length. Such sewer forms an important part of the sanitary sewer system of the borough. In the face of such facts, the court was not justified in finding the fact as alleged in the petition that the highway "had become useless to the public" or that it was supplied or rendered "unnecessary by the opening or laying out of a street or highway in place thereof," the words of the local act.

A borough may go underneath the surface of its streets for the construction of pipe lines, conduits, etc., and for any other lawful municipal purpose: Scranton v. Peoples Coal Co., 256 Pa. 332, 337, 100 A. 818; or lay out and ordain such common sewers and drains as may be necessary in any street or alley: §2101 of the General Borough Act (53 PS 14231). While it is true that in the open country where land is taken for a highway, the easement acquired by the public is only for the purpose of a way over the surface, in an urban district not only is the street intended for the passage of persons and vehicles, but the sub-

soil may be used for the purpose of installing sewers, water and gas pipes, or even subways for electric lines or railroads: Cheltenham & Abington v. P. S. C., 107 Pa. Superior Ct. 225, 232, 166 A. 649; Miller v. Boro. of New Oxford, 109 Pa. Superior Ct. 85, 165 A. 766; McDevitt v. People's Nat. Gas Co., 160 Pa. 367, 373, 28 A. 948. In the case of Philadelphia v. Thomas' Heirs, 152 Pa. 494, 25 A. 873, it was held that the construction of a sewer without more on a street not otherwise improved constituted a public use. In the instant case, the testimony was insufficient to support a conclusion that the street was rendered unnecessary by the opening or laying out of a street in the place thereof, or that it had become useless. It is true that the road was not improved by grading, paving, or changing its natural surface, but how or when these improvements should be made was a matter depending on the judgment of the municipal authorities. It is not inconceivable that the borough authorities were justified in insisting that the street remain as it was in order that there might be an outlet across the tracks of the railroad company to the Ohio River for use at future time, or perhaps in an emergency to obtain water from the river or to construct upon it other or larger sanitary or storm sewers. We are of the opinion that there was not any evidence which would support the conclusion that Gallagher Street had been rendered unnecessary by the opening or laying out of a street in the place thereof and consequently the local act of 1871 was of no avail to the petitioners, and that under the admitted facts the street had not become useless, as averred.

The order of the lower court is reversed, and it is directed that an order be entered dismissing the petition.